UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| ESSIE BOWMAN,<br>   next friend of minor child C.B., *et al.*, | )<br>)<br>)<br>) |   |
| Plaintiffs, | )<br>) |   |
| v. | )<br>) | Civ. No. 06-0016 (RMU) |
| DISTRICT OF COLUMBIA, | )<br>)<br>) |   |
| Defendant. | )<br>) |   |

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

Comes now the Defendant, District of Columbia, by counsel, and replies to the Plaintiffs' Opposition to Defendants' Motion to Dismiss, filed March 20, 2006 ("Opposition").

**I.   Plaintiffs Have Failed to Show Their Complaint Is
      Adequate to Establish a Claim Pursuant to 42 U.S.C. §1983.**

In any Section 1983 action against a municipality such as the District of Columbia, the burden is on the plaintiffs to establish that the municipality has a custom or practice that caused an alleged constitutional or statutory violation. See, e.g. Monell v. Dep't of Social Services of the City of New York, 436 U.S. 658, 694 (1978); Daskalea v. District of Columbia, 227 F.3d 433, 441 (D.C. Cir. 2000). As shown in the Defendant's March 9, 2006, Motion for Partial Dismissal ("Motion"), the Complaint in this case does not even contain a suggestion of a claim based upon any custom, policy statement, or procedure of the District of Columbia which has deprived plaintiffs of any constitutional or statutory right. It is strictly a complaint seeking attorney's fees.

The Opposition (p. 3) first challenges the Defendant's citation of <u>Walker v. District of Columbia,</u> 157 F.Supp.2d 11 (D.D.C. 2001), as representing the test to be applied in measuring the adequacy of the Amended Complaint vis-à-vis Section 1983. The Defendant will not here repeat its Motion presentation on the point – much of which the Plaintiffs simply ignore. Suffice it to say, within the past week, yet another decision in this Court – in <u>Savoy-Kelley v. Eastern High School</u>, Civ. No. 04-1751 (D.D.C. April 14, 2006) – applied the <u>Walker</u> test. In dismissing a Section 1983 claim included in a complaint asserting District violations of IDEA, Judge Kessler there found, among other things, that the "Complaint makes no mention of any 'persistently egregious' conduct on the part of Defendant, or any 'custom or practice' giving rise to an IDEA violation." <u>Id</u>., Mem. Op. at 10.

So here, the Complaint is similarly devoid of any such assertions or explanations. To be sure, the Opposition claims that the Amended Complaint "set out a custom or practice . . . that [is] the basis of the Section 1983 claim." Opp., p. 3. But this is simply pleading rhetoric, arguing how the Plaintiffs believe the entirety of the Amended Complaint should be interpreted. Nowhere is there an identification of any specific part of the Amended Complaint that asserts an improper "custom or practice," much less demonstrates any "persistently egregious" conduct.

Moreover, even the Opposition's after-the-fact pleading rationalizations are themselves contradictory and contrived. At one point (Opp., p. 3) the forbidden "custom or practice" is said to be "non-payment of attorneys fees to prevailing parties at IDEA hearings," while at a second point it is said to be "DCPS's failure to obey Section 327 and pay up to the $4,000.00 cap in IDEA cases" (Opp., p. 5). The first is just silly. There

2

are absolutely no Amended Complaint assertions (or truth to the conclusion) that DCPS does not pay "attorneys fees to prevailing parties at IDEA hearings." Indeed, many of the Plaintiffs counsel here were in fact paid something, and the Plaintiffs simply dispute the amount of payment.

The second so-called "custom and practice" is equally nonsensical. DCPS cannot "fail[ ] to obey Section 327" of the Appropriations Act (the fee cap) by not "pay[ing] up to the $4,000.00 cap in IDEA cases." For the statute does not *require* a $4,000 payment in IDEA cases; it simply forbids paying *more* than that amount. And in some cases, a payment of $4,000 would exceed the amount that parents' counsel *request* for due process hearing-related fees. See, e.g., Amended Complaint, paras. 5, 9, 13, 25, 29, 33, 37, 49, 57, 61, 65, 73, 77, 81, 89.

The Opposition relies on Sparrow v. United Air Lines, Inc. 216 F.3d 1111, 1115 (D.C. Cir. 2000), to defend the adequacy of its Amended Complaint with respect to a Section 1983 claim. However, that decision is wholly inapposite. In Sparrow, where the plaintiff alleged a job termination because of racial discrimination, the court was clear that the complaint included a number of allegations "fleshing out specific claims of both discriminatory failure to promote and discriminatory termination." Id. at 1116. Thus, the court concluded that the plaintiff had sustained his burden under Rule 12 (b)(6). By contrast, there is no such specificity in the Amended Complaint here.

Plaintiffs admit that the Circuit Court has found that "a section 1983 complaint alleging municipal liability must include some factual basis for the allegation of municipal policy or custom." (Opp. at 4, citing Atchinson v. District of Columbia, 73 F.3D 418, 422 (D.C. Cir. 1996)). However, in the instant case, the only two references in

3

the Amended Complaint to Section 1983 are contained in the jurisdictional paragraph and in the request for relief. The remaining 90 paragraphs only detail dates when administrative hearings were held, assert that plaintiffs were prevailing parties, posit that they submitted petitions for attorneys' fees to DCPS, and state that they were paid by DCPS, but not for the full amount that they claimed.

Ultimately, the Plaintiffs fail to take into account that DCPS has not only a right but an obligation to review bills submitted to them for payment. DCPS is only obligated to pay for what is fair and reasonable, it is not obligated to pay any and all amounts submitted to it, regardless of merit. The Amended Complaint makes clear that the Plaintiffs were paid attorneys fees. While they may not believe counsel were paid enough, there is nothing in the Amended Complaint, even were Plaintiffs to prove all facts contained therein, that would establish a violation of Section 1983. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## II.     Defendant's Arguments Regarding CFSA are Not Moot.

In its Motion (p. 7), the Defendant showed that the specification of CFSA in the original Complaint was unauthorized, improper and a violation of both Fed. R. Civ. P. 11(b) and Rule 3.3(a)(1) of the District of Columbia Rules of Professional Conduct. The Opposition does not respond specifically to any of the Defendant's assertions, nor does it address the propriety of the initial Complaint under the cited court rules. See Opp., p. 5. Instead, it is asserted that all such matters are moot, since the initial Complaint was subsequently amended to substitute Plaintiffs' counsel for CFSA. Id.

Improper conduct, however, is not excused simply because changes are made to an initial complaint when the impropriety is discovered. Moreover, the Opposition's

efforts to excuse the initial Complaint's unauthorized identification of CFSA are neither coherent nor adequate. Ultimately, it remains that identifying any individual or entity as a plaintiff in a filed complaint is a representation to the Court of the truthfulness of what is submitted. The fact of an initial representation both unauthorized and known to be untrue remains to be dealt with here, and cannot be papered over by later curative actions.

### III. The Opposition Fails to Show the Substitution of Plaintiffs' Counsel for CFSA to be Proper.

#### A. The Opposition fails to demonstrate that Plaintiffs' counsel have either the authority or the capacity to appear as parties plaintiff in this case.

In the Amended Complaint, Plaintiffs' counsel named themselves as next-friend plaintiffs for six students – P.C., V.H., J.C., D.L., K.J and M.C. In its Motion (at pp. 8-10), the Defendant challenged the capacity of Plaintiffs' counsel to so appear. The Defendant argued that counsel's reciting their status as "educational advocates" appointed by the Family Division of the Superior Court in abuse and neglect cases did not itself establish their authority either to initiate the DCPS due process hearings on which the fee claims are based, or their authority to appear here as parties seeking attorneys' fees reimbursement under IDEA. Id.

The Opposition submits copies of Superior Court appointment orders for four of the six students identified above; *nothing* is provided as to J.C. or M.C. Three of the orders (as to P.C., V.H. and D.L.) identify Mr. Houston as the appointee, while the fourth (as to K.J.) identifies the firm of Dalton, Dalton & Houston. As to those four students, the Opposition summarily asserts that the appointing orders empowered filing for due process hearings, and later seeking attorneys' fees:

5

> The Court Orders state that the educational advocates are appointed as "Guardian, Limited for Educational Purposes" and are authorized to perform whatever duties are necessary to determine the student's educational needs and ensure proper placement. This language in the Court Orders covers the authority of the educational advocate to [1] file a due process hearing and [2] later seek payment of attorneys' fees from DCPS.

Opposition, p. 6.

On their face, the orders do neither. The orders each first state that the individual/firm is "appointed as Counsel for Educational Purposes." While the initial ordering provision generally states that the appointment is "to facilitate and determine the educational needs of the Respondent and to insure that he is properly placed," every of the succeeding, qualifying ordering clauses specifically describe events and activities relating to the specific Superior Court proceeding. As to P.C., for example, Mr. Houston was

> . . . authorized to attend and participate in, and provide reports in connection with, *any court hearing held in this case.*

> . . . authorized to investigate fully the facts *of this case*, to review both the case and social records pertaining to this case, subject to the provisions and proscriptions of D.C. Code Sections 116-2331032 and 2336 ((1989 Repl.)to review and obtain copies, if necessary, of respondent's educational records, medical records, social worker's reports, psychiatric and psychological evaluations, or other records pertaining to the respondent that are necessary to the performance of the Educational Advocate's duties.

> . . . [empowered] to authorize testing, screening, and whatever else is necessary to perform the duties *incidental to the appointment*. [Emphasis added.]

There is nothing on the face of the order, reasonably read, that authorizes the initiation of discrete DCPS due process hearing proceedings under IDEA, and the Plaintiffs have shown no such relationship here.[1]

---

[1] Indeed, in the order appointing Dalton, Dalton & Houston for K.J., the firm is said to be appointed, among other things, "to meet the needs of the Court."

6

Moreover, the disparity in timing of the appointing orders relied on and the administrative hearings initiated reinforces uncertainties in that regard. The P.C. appointing order, for example, was issued November 18, 2002. Yet the due process hearing said here to have been authorized by that order was not requested until *nearly two years later*. See Complaint, para. 12. Similarly, the IDEA hearings for V.H. and D.L. were each held *some 18 months* after the respective appointing orders. See Amended Complaint, paras. 52, 84.

Neither do the four court orders provided authorize pursuit of IDEA attorneys' fees in this Court. As stated in the Motion (p. 10),

> Rule 42(d) of the Superior Court directs that attorneys fees for time expended pursuant to an appointment are to be submitted to, and paid by, the District Court – and subject to the limitations of D.C. Code §16-2326.01. And the Superior Court's Plan for Furnishing Representation in Neglect Proceedings in the District of Columbia ("Plan") – which appears on the Superior Court's website, and is attached hereto as Exhibit 1 – similarly makes clear that that court may, in certain circumstances, appoint "a special education advocate to pursue the child's educational needs," but that those attorneys are "subject to compensation limitations set forth in D.C. Code §16-2326.01" (Plan, pp. 3-4), and that compensation for appointed services is to be addressed to Superior Court (Plan, pp. 8 et seq.). [Footnotes omitted.]

The only direct assertion otherwise in the Opposition is the following (at p. 8):

> The [Superior] court appointed the educational advocates with the understanding that the attorney would seek fees from DCPS and not the Superior Court under the complex litigation exception to the guardian *ad litem* fee rules. (*See* Def.'s Ex. 1: Plan § II(D)(2)(c); Pls.' Ex. 1.)

But nowhere is there any support for the assertion of an "understanding" of any kind that counsel would "seek fees from DCPS and not the Superior Court."

Moreover, the suggestion that such an "understanding" can be deduced from "the complex litigation exception to the guardian ad litem fee rules" is patently meritless.

Section II.D. of the "Plan for Furnishing Representation . . ." attached to the Motion describes how and to what extent appointed counsel will be compensated for services rendered pursuant to an appointment.  Subsection D(1) of the Plan (p. 8) explains the processes applicable to fee applications to the Fiscal Officer, while Subsection D(2) provides as follows:

> (2)   Maximum fees for counsel.
>    (a)   Maximum hourly rate for counsel.  The maximum hourly rate for attorneys shall be the fixed rate established by D.C. Code §11-2604(a)(2001), . . . as such statute may from time to time be amended.
>
>    (b)   Maximum amounts for counsel. The maximum compensation to be paid to an attorney for any neglect proceeding or termination of parental rights case shall not exceed the maximum amounts established by D.C. Code §16.2326.01(b) (2001), . . . as such statute may subsequently from time to time may be amended. . . . [2]

The Opposition, however, asserts that wording in the appointing orders for V.H. and D.L. ("for the purpose of billing the District of Columbia Public Schools this matter is hereby certified as a Complex Litigation") represented an "exception" to the requirement to apply to the Superior Court for fees – an "exception" said to exist under Subsection D(2)(c) of the Plan. Opp., p. 8.  Tracking D.C. Code §16-2326.01(f)(1), that part of the Plan (p. 9) states, in relevant part:

> (c)   Waiving maximum counsel fees.  Payment in excess of the statutory maximum amount may be made for extended or complex representation whenever such payment is necessary to provide fair compensation.  A request for excess

---

[2] See also Plan, pp. 3-4:
> The Court may also appoint a special education advocate to pursue the child's educational needs. Appointment of these attorneys . . . is subject to compensation limitations set forth in D.C. Code §16-2326.01.

The current fee cap in D.C. Code §16-2326.01(b)(1) is $1,600.

8

compensation shall be submitted by the attorney for approval by the Chief Judge of the Superior Court upon recommendation of the presiding judge in the case.[3]

On its face, the Subsection D(2)(c) of the Plan does not create an "exception" *to applying to the Superior Court* for fees. Instead, it permits an "exception" *to the statutory fee limitation* if the presiding (Superior Court) judge recommends, and the (Superior Court) Chief Judge approves, a higher figure, taking into account various considerations also set forth in Subsection D(2)(c).

With respect to the propriety of counsel's appearing here as a next-friend plaintiffs, the Opposition does not dispute the Motion's arguments (at pp. 10-11) that a challenge to such appearances are appropriately to be considered at this point, and that since each of the minors has been appointed guardians <u>ad litem</u>, those would be the proper representatives in the absence of their disqualification by the court in favor of counsel here. Neither does the Opposition contest the Motion's contention (at pp. 11-12) that the interests of the two attorneys are not those of the minors for whom they purport to appear.

Instead, the Opposition essentially argues that, since 20 U.S.C. § 1415(i)(3)(B)(1) permits an award of attorneys' fees to a "parent," and because 20 U.S.C. §1401(23)(B) defines a "parent" as "a guardian," counsel can properly appear as a next-

---

[3] See D.C. Code §16.2326.01(f)(1):

> Claims for compensation and reimbursement in excess of the maximum amount provided in subsection (b) may be approved for extended or complex representation when the payment is necessary to provide fair compensation. The request for payment shall be submitted by the attorney for approval by the chief judge of the Superior Court of the District of Columbia upon recommendation of the presiding judge in the case or, in cases before the District of Columbia Court of Appeals, approval by the chief judge of the District of Columbia Court of Appeals upon the recommendation of the presiding judge in the case.

9

friend plaintiff here. Opp., pp. 6-7.[4]  But in fact, Plaintiffs' counsel is not the minors' "guardian" in any legally consequential sense here.  As the Opposition notes at one point (p. 5), "CFSA is the legal guardian of the minor Plaintiffs who are wards of the District of Columbia."  And the Opposition does not dispute that guardians <u>ad litem</u> were also appointed for each of the minors by the Superior Court.  Yet without persuasive explanation or legal support, the Opposition contends that Plaintiffs' counsel's status as "educational advocates" supercedes both other "guardians" for purposes of IDEA, and in priority for purposes of bringing this action.  The Defendant submits that the mere assertions of such procedural rights and capacity do not establish their truth or vitality.  Moreover, such claims to "guardian" status are inconsistent with D.C. Code §16-2372 – which established the "special advocate " program under which these counsel were appointed – as compared with D.C. Code §16-2304(b)(5), which provides for appointment of a guardian ad litem generally "charged with the representation of the child's best interests."

Contrary to the Opposition's claim (at p. 7), the Defendant is not seeking to "pigeon-hole the Plaintiffs into one of two categories."[5]  The Defendant contends that Plaintiffs' counsel has neither specific authority from the Superior Court, nor the capacity required by the Federal Rules, to appear as plaintiffs in this case.

---

[4] Among its many gratuitous statements in this connection, the Opposition (p.8) asserts that while "DCPS is required to appoint surrogates for wards of the District of Columbia," DCPS "does not have a system in place to appoint surrogates for wards."  That statement is wrong.  See, e.g., http://www.k12.dc.us/dcps/specialed/dcpsspecedhome.html .

[5] It is true, however, that to the extent Plaintiffs' counsel seeks to cloak themselves in the mantle of "parent" under IDEA, the face the bar to attorneys' fees that flow from that status. See, e.g., <u>Doe v. Board of Educ.</u>, 165 F.3d 260 (4th Cir. 1998); <u>Woodside v. Sch. Dist of Phila. Bd. Of Educ.</u>, 248 F.3d 129 (3d Cir. 2001).  They may not, indeed, be both "parent"/party and paid counsel.

B. **The Plaintiffs' assertion of estoppel is meritless.**

While it does not relate the argument to the issue of Plaintiffs' counsel appearing in *this* action in *this* Court, the Opposition (p. 8-9) does contend that the Defendant should be estopped from contesting the legitimacy of claims to DCPS for payment of attorneys' fees, in light of the fact that DCPS has in the past in fact paid (at least in part) such invoices. However, whether viewed as an assertion of equitable estoppel or promissory estoppel (it is not said which), the Plaintiffs' arguments fail

As a general matter, "the case for estoppel against the government must be compelling, and will certainly include proof of each of the traditional elements of the doctrine . . . ." ATC Petroleum, Inc. v. Sanders, 274 U.S.App.D.C. 12, 860 F.2d 1104, 1111 (1988). And the "elements of estoppel include: (1) a false representation; (2) a purpose to invite action by the party to whom the representation was made; (3) ignorance of the true facts by the party; (4) reliance; and (5) a showing of an injustice and a lack of undue damage to the public interest." Washington Bancorporation v. Federal Deposit Insurance Corporation, No. 95-1340, 1996 U.S. Dist. Lexis 3876, at *47 (D.D.C. Mar. 19, 1996) (citing ATC Petroleum, Inc. v. Sanders, supra, 860 F.2d at 1111).[6] No such showings have been made here.

Moreover, estoppel will not lie against the Government in the absence of a showing of "affirmative misconduct." Cf., e.g., Larouche v. Federal Election

---

[6] See also Kosakow v. New Rochelle Radiology Associates, 274 F.3d 706, 725 (2d Cir. 2001) ("Under federal law, a party may be estopped from pursuing a claim or defense where: 1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely upon it; 2) and the other party reasonably relies upon it; 3) to her detriment.")(citing Heckler v. Community Health Services of Crawford County, Inc., 467 U.S. 51, 59 (1984)); Falcone v. Pierce, 864 F.2d 226, 228 (1st Cir. 1988) ("The traditional elements of equitable estoppel are first, a material misrepresentation of a party who had reason to know of its falsity; second, reasonable reliance upon the misrepresentation; and third, some disadvantage to the party seeking to assert estoppel fairly traceable to the misrepresentation") (citing Heckler, 467 U.S. at 59).

Commission, 28 F.3d 137, 142 (D.C. Cir. 1994) ("A private party asserting estoppel against the United States Government must demonstrate . . . that the latter has engaged in "affirmative misconduct"[citing Conax Florida Corp. v. United States, 824 F.2d 1124, 1131 (D.C.Cir. 1987)]).[7]  As recently observed in Artis-Bey v. District of Columbia, 884 A.2d 626, 638  (D.C. 2005), where a litigant similarly challenged the District's right to advance a failure-to-exhaust-administrative-remedies argument:

> It is "well established" . . . that "equitable estoppel will not lie against the Government as against private litigants," unless there is some finding of affirmative misconduct.  *District of Columbia v. Greene,* 806 A.2d 216, 222 n.8 (D.C. 2002)(quoting *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 419 . . . (1990).

As in Artis-Bey and Larouche, the Plaintiffs here do not assert "affirmative misconduct" by the District.  DCPS payments might well have been made as a matter of policy judgment, or based on a mistaken view of the applicable law.  Neither circumstance could reasonably be interpreted as "affirmative misconduct."  And it is no valid basis for barring a consideration of the arguments advanced by the Defendants in this case.

**IV.    The Exceptions to Rule 3.7 of the D. C.  Rules of Professional Conduct are not Applicable to This Case.**

In the Motion (pp. 12-13), the Defendant argued that proceeding in this action with lawyers in the same firm acting as both plaintiffs and counsel violates Rule 3.7 of the Rules of Professional Conduct.  Should the claims as to which Mr. Houston and Ms. Duos appear as plaintiffs not be dismissed, it was pointed out, they would be examined

> . . . on the documents and details relating to (1)  their appointment, and the scope of their appointment, by the Superior Court – matters that bear directly on their

---

[7] See also Office of Personnel Management v. Richmond, 496 U.S. 414, 419   (1990) ("From our earliest cases, we have recognized that equitable estoppel will not lie against the Government as against private litigants").

>authority from that court to appear in this Court in this action; (2) who authorized them to institute due process proceedings at DCPS and/or with whom they had retainer or other arrangements – also matters bearing on their status as next friend plaintiffs; (3) whether there are other Superior Court-appointed representative for the children involved, and whether children's guardians at litem (or anyone else) authorized Mr. Houston and Ms. Duos to appear as next friend plaintiffs in this action; (4) the reasons why they were substituted as next friend plaintiffs for the earlier (improper) designation of CFSA; (5) whether they have requested reimbursement for services from the Superior Court and whether payments have been received.

Motion, p.p. 12-13.

The Opposition, however, asserts that their testimony would "relate[ ] to an uncontested issue," and would also represent "testimony relat[ing] to the nature and value of legal services rendered in the case" – two exceptions to the Rule 3.7 prohibition. Opp., pp, 9-10.  Concerning the "uncontested issue" claim, there are two glaring deficiencies.  The Opposition states (at p. 9) that "the attorneys' fees owed to the Plaintiffs is an uncontested issue. . . . The Defendant has not contested the fact that these fees were earned by prevailing parties, submitted to DCPS for payment, and have not been paid in full."  In fact, the Defendant has conceded nothing to the Plaintiffs.  It has yet even to answer the allegations in the Amended Complaint, and indeed will contest the propriety of the fee claims asserted.  But more importantly, the threshold "issue" that would be pursued – as the Motion made clear – was not the fee details, but the authority and capacity of the Plaintiffs' counsel to act as plaintiffs here.  And the Opposition itself confirms that that issue is far from "uncontested."  The exception of Rule 3.7(a)(1) is plainly inapplicable.

The "nature and value of legal services" exception of Rule 3.7(a)(2) is equally unavailing.  That exception essentially relates to testimony in support or defense of fee invoices – what was done, for example, by whom, at what hourly rate, etc.  The

13

testimony that would be sought by the Defendant, however, would not concern counsel's billings; that matter could be handled on the papers. As made clear in the Motion, the testimony sought here would concern the threshold issue of counsel's *authority and capacity to appear as plaintiffs here* – a matter that does *not* relate to the "nature and value of legal services," but addresses the propriety of counsel's presence before this Court as a party.

Plaintiffs also claim that Rule 3.7(b) would permit Mr. Houston to withdraw, and for others in the firm to continue with the litigation in any event:

> Mr. Dalton and Mrs. Dalton would not be precluded from continuing as counsel during the trial portion, be cause, pursuant to Rule 3.7(b) above, Mr. Houston would not be precluded from acting as advocate in the trial by Rule 1.7 or Rule 1.9 [, which] lay out the conflict of interest standard, and in this case, no conflict of interest exists.

Rule 1.7(b) provides, however, that

> . . . a lawyer shall not represent a client with respect to a matter if :
> . . . .
> (4) The lawyer's professional judgment on behalf of the client will be or reasonably may be adversely affected by the lawyer's responsibilities to interests in . . . the lawyer's own financial, business, property, or personal interests.

That the "financial [and] business" interests of Mr. Houston and the law firm are directly involved in this action cannot be disputed – this is an action purely to recover money for the firm and its attorneys, utilizing a next-friend plaintiff status as cover. Rule 3.7(b) does not shield the attorneys here from disqualification.[8]

---

[8] Unlike Canfield v. Stone, 1993 U.S.Dist.LEXIS 15491 (D.D.C. 1993),cited in the Opposition (p. 10), this is not an action susceptible of a distinction between pretrial motions and the trial itself. There will be no "trial" here – this is essentially a one-step motion for attorneys' fees, ultimately to be concluded on pleadings. And if the issues of counsel's authority and capacity to appear as a party are not disposed of based on the Defendant's Motion, this action will be dealt with on pleadings, aided by whatever discovery is appropriate.

**V.      Plaintiff Filings in Another Case Highlight the Need to Dismiss Certain of the Claims Herein as Duplicative of Those in That Other Action.**

In a "Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss" filed March 7, 2006, in <u>Gray v. District of Columbia</u>, Civ. No. 06-0114 (D.D.C) – to which the Defendant is simultaneously replying today – Plaintiffs in that case have identified six minors in this case (R.G., L.D., V.H., T.P.,D.L. and T.E.) who are also plaintiffs in this Court in <u>Gray</u>, and whose claims in both cases are based on the same facts and circumstances.[9]

If nothing else, in the obvious interest of judicial economy, the claims of those minors should be dismissed here, or in the <u>Bowman</u> action.[10] While Plaintiffs' counsel may have different legal theories in the two cases, the fact is that in each, the Court will have to review and evaluate the same facts concerning the amount of legal fees sought, and the circumstances of DCPS' actions vis-à-vis those fees. Neither the Court nor the Defendant should be required to duplicate their efforts with respect to the same matters.

## CONCLUSION

Well established precedent makes clear that, with respect to the assertion of a claim pursuant to 42 U.S.C. §1983, the Amended Complaint is clearly deficient. Concerning the propriety of counsel's having improperly represented CFSA as a plaintiff with respect to seven students, that issue – and its consequences – have not been rendered moot by virtue of counsel's later efforts at repair. And the Defendant's arguments concerning disqualification of counsel under Rule 3.7 have not adequately been answered.

---

[9] Compare, respectively, Amended Complaint, paras. 16-23, 44-47, 52-55, 68-75, 84-87, 40-43, with <u>Gray v. District of Columbia</u>, <u>supra</u>, Amended Complaint, paras. 12-19, 68-71, 96-99, 156-159, 184-187, 280-283.

[10] This same issue is being identified in a simultaneously-filed reply by the Defendant in <u>Gray</u>.

On the unprecedented issue of Plaintiffs' counsel's appearance as a party plaintiff, the authority and capacity of Plaintiffs' counsel to do so is a threshold matter of significance and importance.  While counsel claims Superior Court authority to be a party here, the documentation relied on provides no clear support, and both the D.C. Code and the Superior Court's Rules and representation Plan are inconsistent with pursuit in this Court of fees for activities assertedly resulting from a Superior Court appointment as "educational advocate" in Family Division abuse and neglect proceedings.  Nowhere is it shown that such an appointment gave counsel free rein to initiate administrative DCPS proceedings without parent or guardian <u>ad</u> <u>litem</u> commission, and further to unilaterally assume a feigned-plaintiff status to effectuate collection in this Court.

In this regard, the Defendant believes that dismissal of the claims now brought in the name of counsel <u>qua</u> plaintiff must be dismissed.  At a minimum, if the Court is unclear on the scope and intent of the Superior Court's appointment of counsel as an "educational advocate," and that court's view of the proper administration of attorneys' fees resulting from such an appointment, a referral of these matter to the Superior Court for its views should be considered before any final action here in these respects.


    Respectfully submitted,

    ROBERT J. SPAGNOLETTI
    Attorney General for the District of Columbia

    GEORGE C. VALENTINE
    Deputy Attorney General

    /s/ Edward P. Taptich
    EDWARD P. TAPTICH [012914]
    Chief, Equity, Section 2

         /s/ Maria L. Merkowitz
         MARIA L. MERKOWITZ [312967]
         Senior Assistant Attorney General
         441 4th Street, N.W.
         Sixth Floor South
         Washington, DC 20001
         (202) 442-9842

April 21, 2006